UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASHLEY N. HUGHES,<br><br>      Plaintiff,<br><br>  v.<br><br>THE HOME DEPOT, INC.,<br><br>      Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 09-5527<br>(JEI/KM)<br><br>**OPINION** |

**APPEARANCES:**

COSTELLO & MAINS, P.C.
By: Kevin M. Costello
2090 Route 70 East
Cherry Hill, NJ 08003
        Counsel for Plaintiff

EPSTEIN, BECKER & GREEN, P.C.
By: Patrick G. Brady & John Michael O'Connor
One Gateway Center
Newark, NJ 07102
        Counsel for Defendant

**IRENAS**, Senior District Judge:

Plaintiff Ashley N. Hughes brings this suit against the Defendant Home Depot U.S.A., Inc.[1] arising out of Plaintiff's time as an employee of Defendant.[2]

Count I of the Complaint alleges that Defendant created a hostile work environment for Plaintiff in violation of the New Jersey Law Against Discrimination (the "LAD"), N.J.S.A. § 10:5-1 et seq.  Count II of the Complaint, also brought under the LAD,

---

[1] Plaintiff improperly identified Defendant as "The Home Depot, Inc."

[2] The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332.

alleges retaliatory discharge by Defendant.

Defendant has moved for summary judgment on all counts. For the reasons set forth below, the Court will deny summary judgment on Count I and grant summary judgment on Count II.

## I.

Plaintiff describes herself as "intersexed" or a "partial hermaphrodite." (Def.'s Statement of Uncontested Facts (DSUF) ¶ 1) Plaintiff explains that she was born with male sexual organs as well as a large amount of female hormones. (*Id.*) She lived as Ronald Hughes until the age of 14, when she changed her name to Ashley. (*Id.* at 2)

Plaintiff was hired by Defendant in November 2006 to work at its Lawnside, New Jersey store. (*Id.* at 5) Plaintiff alleges that soon after being hired, she began hearing "whispers and rumors around the store" that Plaintiff was in fact a man. (Pl.'s Statement of Facts (PSOF) ¶ 1) She also began hearing rumors that male customers were talking about her and making threats toward her. (*Id.*)

Plaintiff first complained to Human Resources Manager Naomi Jordan about these issues in December 2006. (*Id.*) Ms. Jordan invested these complaints and prepared a report of her investigation. The report noted that the Kevin Devoy, the store manager, asked what the appropriate "bathroom procedure" was with regards to Plaintiff, as a customer had told Mr. Devoy that he was uncomfortable using the same bathroom as "it" (referring to Plaintiff). (*Id.*) Ms. Jordan advised Mr. Devoy that it was appropriate for Plaintiff to use the women's bathroom, and that

Mr. Devoy should stop acting upon rumors about Plaintiff and to try to stop the rumors from circulating.  (*Id.*)

Ms. Jordan noted in her report that Mr. Devoy did not appear to be taking her advice seriously, which was of a particular concern because other employees would emulate Mr. Devoy's actions.  (*Id.*)  Further, Mr. Devoy did not discuss these issues with the store's assistant managers, nor did he assist Ms. Jordan when she met with the assistant managers to discuss the issue.  (*Id.*)

On December 18, 2006, a store associate complained that she overheard three other associates talking about Plaintiff in a derogatory fashion.  (*Id.* at 2) One of the three associates confirmed the content of the conversation.  (*Id.*) On December 21, 2006, someone wrote "faggot" on Plaintiff's locker.  (*Id.*)

In response to these activities, Ms. Jordan re-circulated Defendant's policy regarding respect to all assistant store managers and department supervisors.  (*Id.*)  During a meeting, one department head related that an employee had said if Plaintiff came near him, he would respond with violence.  (*Id.*) When questioned, this employee refused to answer questions about this issue.  (*Id.* at 3)

At some point thereafter, unknown persons wrote the phrase "we don't need your kind here, go home" in soap on Plaintiff's car.  (*Id.*)  While Ms. Jordan recommended that certain employees be disciplined and that Plaintiff be transferred, none of these actions were ever taken.  (*Id.*)  Ms. Jordan shortly thereafter

ceased working at Defendant's store. (*Id.*) Caroline Melamed, Defendant's regional human resources manager, took over the investigation in January 2007 and advised Plaintiff to be patient. (*Id.*)

Plaintiff alleges that the harassment continued into 2009. (*Id.*) Plaintiff made multiple complaints about these incidents, including to Mr. Devoy. (*Id.* at 4) Mr. Devoy would allegedly either avoid Plaintiff or advise her to speak to human resources. (*Id.*) At one point, Mr. Devoy questioned why Plaintiff was still working for Defendant if there was so much harassment going on. (*Id.*) Plaintiff alleges that she was keeping records of these incidents in notebooks, but Mr. Devoy eventually claimed these notebooks as Defendant's property. (*Id.*)

Mr. Devoy left his employment with Defendant in the spring of 2009. (*Id.*) Plaintiff advised the new manager of her status and the repeated harassment to which she had been subject. (*Id.*) In May of 2009, Plaintiff overheard a vendor saying that Plaintiff "was actually a guy but is a girl now." (*Id.*) Despite complaining to both the assistant store manager and the vendor, no actions were taken. (*Id.*) Later that month, though, one of Defendant's human resources managers inquired whether Plaintiff brought the harassment upon herself by telling people her "business." (*Id.*)

In June 2009, Plaintiff was terminated from her position with Defendant. Defendant claimed the termination was a result of attendance issues, but Plaintiff claims she was operating

within store attendance policies.  (*Id.*)

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'"  *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III.

### A.

Defendant first argues that Plaintiff's claim of harassment is time barred under the LAD's two year statute of limitations.

5

The Court disagrees.

Plaintiff admits that certain of the instances of harassment were outside the two year statute of limitations. Nonetheless, Plaintiff argues that her claim is not time barred because she was the subject of a continuous pattern of harassment which continued into the statute of limitations period.

It is undisputed that there is a two year statute of limitations for claims under the LAD. *See Montells v. Haynes*, 133 N.J. 282, 292 (1993). The "continuing violation theory" serves as an exception to the statute of limitations when an individual experiences a continual, cumulative pattern of tortious conduct. *Roa v. Roa*, 200 N.J. 555, 566 (2010). Under the continuing violation theory, the statute of limitations does not begin to run until the wrongful action ceases. *Id.*

In *Shepherd v. Hunterdon Developmental Ctr.*, the New Jersey Supreme Court adopted the following test to determine if alleged harassment rises to the level of being a continual, cumulative pattern of tortious conduct:

> First, have plaintiffs alleged one or more discrete acts of discriminatory conduct by defendants? If yes, then their cause of action would have accrued on the day on which those individual acts occurred. Second, have plaintiffs alleged a pattern or series of acts, any one of which may not be actionable as a discrete act, but when viewed cumulatively constitute a hostile work environment? If yes, then their cause of action would have accrued on the date on which the last act occurred, notwithstanding that some of the component acts of the hostile work environment [occurred] outside the statutory time period.
>
> 174 N.J. 1, 21 (2002).

6

Plaintiff filed her complaint on September 4, 2009. Therefore the statute of limitations bars claims for any harassment which occurred prior to September 4, 2007, unless that harassment was part of a continuing violation which continued past that date.

For the purposes of the present motion, the Court must construe the facts and inferences in the light most favorable to Plaintiff in considering whether there has been a continuing violation. The Court finds that there is a dispute of material fact as to the existence of a continuing violation. In Plaintiff's version of events, Plaintiff suffered a number of incidents of harassment after September 7, 2007, many of which were similar in substance and nature to those that occurred prior to that date. Plaintiff's version of events supports a reasonable inference that she suffered a pattern or series of harassment which did not end until after September 7, 2007, and therefore her claim of harassment in Count I is not time barred.

**B.**

Defendant next argues that Plaintiff's alleged harassment does not rise to the level of being actionable under the LAD. The Court disagrees.

To establish a hostile work environment claim under the LAD, a plaintiff must show that "the complained-of conduct (1) would not have occurred but for the employee's gender; and it was (2) severe or pervasive enough to make a (3) reasonable

7

woman believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." *Lehmann v. Toys 'R' Us,* 132 N.J. 587, 603-604 (1993). Defendant argues that Plaintiff's has failed to establish each of these elements. The Court disagrees.

The Court finds that there is a dispute of material fact as to the existence of a hostile work environment. Plaintiff has presented evidence which, when taken in the light most favorable to Plaintiff, supports her version of events - namely that she suffered harassment because of her gender, such harassment was severe, pervasive, hostile and abusive, and a reasonable woman could believe that the harassment altered the conditions of Plaintiff's employment. Plaintiff has therefore met the burden necessary for her hostile work environment claim to survive summary judgment.

## C.

Finally, Defendant argues that Plaintiff has not established a prima facie claim for retaliatory discharge, nor has she been able to rebut Defendant's non-retaliatory reason for her dismissal. The Court agrees.

The familiar *McDonell Douglas* burden shifting framework applies. *See, e.g., Reyes v. McDonald Pontiac GMC Truck*, 997 F.Supp. 614, 619 (D.N.J. 1998) Plaintiff must establish her prima facie case of retaliatory discharge. *Id.* Defendants can then put forth a legitimate non-discriminatory reason for the adverse employment action. *Id.* Lastly, Plaintiff may put forth

8

evidence supporting an inference of pretext. *Id.*

To establish a prima facie case of retaliatory discharge under the LAD, "plaintiff must show that: (1) she was engaged in a protected activity known to the defendants; (2) she was thereafter subjected to an adverse employment decision; and (3) there was a causal link between the two." *Id.* It is without dispute that Plaintiff's complaints were protected activities under the LAD and that her termination from her position constitutes an adverse employment decision.[3]

The only question remaining, then, is whether there was a causal link between Plaintiff's complaints and her termination. Plaintiff asserts that there is such a causal connection, but provides no evidence in support of that contention. Defendant asserts that Plaintiff was terminated because of her frequent and well documented attendance problems. Although Plaintiff may rebut this claim with evidence that Defendant's reason for the termination was pretextual or doubtful, Plaintiff has failed to present any such evidence and relies on her conclusory allegations alone. Without any evidentiary support, Plaintiff has failed to meet the burden necessary for her claim of retaliation to survive summary judgment. Summary judgment will be granted on Count II of Plaintiff's Complaint.

---

[3] Plaintiff also alleges that Defendant instructed her to not wear high healed shoes, and that this should be considered an adverse employment action. The Court disagrees and finds that such instruction cannot be actionable under the LAD.

9

**IV.**

For the reasons set forth above, Defendant's motion for summary judgment will be denied as to Count I and granted as to Count II.  An appropriate Order accompanies this Opinion.


Dated: April 11, 2011

                                                  s/ Joseph E. Irenas
                                      JOSEPH E. IRENAS, S.U.S.D.J.